# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WORLD MARKET CENTER VENTURE, LLC, a Nevada limited liability company,<br><br>                          Plaintiff,<br><br>         vs.<br><br>ELLEN STRICKLAND, an individual, and E.B. DESIGN WORKS 7 CO., INC., a Washington corporation,<br><br>                          Defendants.<br>_____<br>ELLEN STRICKLAND, an individual, and E.B. DESIGN WORKS 7 CO., INC., a Washington corporation,<br><br>                          Counter-Plaintiffs,<br><br>         vs.<br><br>WORLD MARKET CENTER VENTURE, LLC, a Nevada limited liability company,<br><br>                          Counter-Defendant.<br>_____ | Case No.: 2:08-cv-00968-RLH-RJJ<br><br>**O R D E R**<br><br>(Motion for Summary Judgement–#86; Motion for Summary Judgment–#87) |

/

/

1

Before the Court is Plaintiff/Counter-Defendant World Market Center Venture, LLC's ("WMCV") **(Motion for Summary Judgment on the Issue of Liability** (#86), filed December 21, 2010.  The Court has also considered Defendants/Counter-Plaintiffs Ellen Strickland and E.B. Design Works & Co. Inc.'s (collectively "Strickland") Opposition (#111), filed January 14, 2011, and WMCV's Reply (#120), filed February 3, 2011.

Also before the Court is WMCV's **Motion for Summary Judgment on the Issue of Damages** (#87), filed December 21, 2010.  The Court has also considered Strickland's Opposition (#113), filed January 14, 2011, and WMCV's Reply (#123), filed February 3, 2011.

## BACKGROUND

This dispute arises from WMCV's alleged infringement of Strickland's trademark of the word "Livingreen," the words 'living' and 'green' combined into a single word or mark with one 'g'.  Strickland registered the Livingreen mark with the U.S. Patent and Trademark Office in 2002 and again in 2006.  LIVINGREEN, Registration Nos. 2,540,007 and 3,165,993.  WMCV initiated this suit seeking a declaratory judgment that it did not infringe Strickland's mark. Strickland counter-sued, alleging: (1) trademark infringement under 15 U.S.C. § 1114(1), (2) unfair competition under 15 U.S.C. § 1125(a), (3) dilution under 15 U.S.C. § 1125(c), (4) common law trademark infringement, and (5) common law unfair competition.

WMCV operates the World Market Center, a large trade show center located in Las Vegas, Nevada.  Defendants are a Washington corporation and its owner, Ellen Strickland. Strickland operates three stores in various parts of California named Livingreen, which offer environmentally friendly products ranging from paints and varnishes to furniture.  WMCV used the mark Livingreen in naming areas of its trade show floor for five different trade shows. Specifically WMCV named an area the "Livingreen Pavilion," and offered the Livingreen Pavilion to vendors who wished to display environmentally friendly wares.  However, since September of 2009, WMCV has ceased using the Livingreen name and used the mark "One Good World" in its place.

1   WMCV argues that Strickland's mark is not valid and protectable and therefore the
2   Court should grant summary judgment. Separately, WMCV argues that Strickland has not proven
3   any damages and therefore the Court should grant summary judgment. For the reasons discussed
4   below, the Court denies the motions.

## DISCUSSION

### I.   Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential

1  element of the nonmoving party's claim or defense or show that the nonmoving party does not
2  have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."
3  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the
4  moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to
5  "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
6  The nonmoving party "may not rely on denials in the pleadings but must produce specific
7  evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
8  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
9  show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285
10 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of
11 evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.
12        In addition, the Ninth Circuit has noted that "'[b]ecause of the intensely factual
13 nature of trademark disputes, summary judgment is generally disfavored in the trademark arena.'"
14 *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005),
15 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)).
16 **II.    WMCV's Motion on Liability**
17     **A.    Trademark Infringement**
18        "The Lanham Act allows the holder of a protectable trademark to hold liable any
19 person who, without consent, 'use[s] in commerce any ... registered mark in connection with the
20 sale, offering for sale, distribution, or advertising of any goods or services' which is likely to cause
21 confusion." *KP Permanent*, 408 F.3d at 602 (9th Cir. 2005) (quoting 15 U.S.C. § 1114(1)(a)
22 (alteration in original)).  However, before trademark infringement can be shown, the holder must
23 show that the mark is valid, and therefore a protectable interest. *Tie Tech, Inc. v. Kinedyne Corp.*,
24 296 F.3d 778, 783 (9th Cir. 2002) (holding that "there can be no infringement of an invalid
25 mark").  Once the trademark holder shows that it has a protectable interest, the holder must show
26 that the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to

deceive." *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 900 (9th Cir. 2002) (quoting 15 U.S.C. § 1114(1)(a) & (b)).

To receive a declaratory judgment, WMCV must establish that it did not infringe upon Strickland's mark by showing that it did not use the mark in commerce in a manner that was likely to cause confusion. *See Addidas-America, Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1051 (D. Or. 2008). In determining whether there is sufficient similarity between the marks to likely confuse consumers, *GoTo.com, Inc. v. The Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000), courts in the Ninth Circuit look to the eight factors described in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). The factors are: (1) the similarity of the marks; (2) the proximity of the goods; (3) the strength of the mark; (4) evidence of actual confusion between the marks; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the consumer; (7) the alleged infringers intent in selecting the mark; and (8) the likelihood of expansion of the product lines (collectively the "*Sleekcraft* Factors"). *Id*. However, these factors are pliant and some factors may be more important than others depending on the case. *GoTo.com*, 202 F.3d at 1205.

After considering each factor, the Court determines that there are material factual questions and, therefore, summary judgment is improper. The Court will now address each of the *Sleekcraft* Factors.

**1.   Similarity of the Marks**

"The first *Sleekcraft* factor—the similarity of the marks—has always been considered a critical question in the likelihood-of-confusion analysis." *Id*. The marks must be analyzed in their entirety, "adjudged in terms of appearance, sound, and meaning," and "similarities are weighed more heavily than differences." *Id*. at 1206. Here, WMCV argues that the appearance of the word Pavilion when it uses the mark Livingreen, its occasional use of the terms 'living' and 'green' separated into two words, and various other differences makes these marks sufficiently different. The Court agrees that the marks are not exact matches, however, the

5

admitted use of the term 'Livingreen' is sufficiently similar that a reasonable juror could determine that this factor weighs in favor of Strickland.

### 2.     Proximity or Relatedness of the Goods

Related goods or services are generally considered to be more likely to confuse the public as to the source of the goods. *GoTo.com*, 202 F.3d at 1206. Strickland operates three separate stores in California and an online store that reaches across the United States. WMCV operates in Las Vegas, Nevada, but also operates a website and advertises nationally. However, WMCV concentrates its business on furniture while Strickland sells various household items including furniture. This factor might favor WMCV, but it does not favor WMCV strongly and reasonable jurors could disagree about the relatedness. Therefore, this factor does not weigh in favor of summary judgment.

### 3.     Strength of the Mark

The strength of a mark is determined by where the mark places on a continuum of marks. *Rexel, Inc. v. Rexel International Trading Corp.*, 540 F. Supp. 2d 1154, 1164 (C.D. Cal. 2008). "From weakest to strongest, marks are categorized as generic, descriptive, suggestive, and arbitrary or fanciful." *GoTo.com*, 202 F.3d at 1207. Descriptive marks define "a particular characteristic of a product in a way that does not require any exercise of the imagination," whereas "[t]he exercise of some imagination is required to associate a suggestive mark with the product" because the mark suggests the products features rather than describes them. *Surfvivor Media, Inc. v. Survivor Productions* 406 F.3d 625, 631–32 (9th Cir. 2005).

Here, WMCV claims that the Livingreen mark is descriptive. The Court disagrees. Strickland's products are not necessarily green nor alive. While the term 'green' is commonly used to refer to environmentally friendly things, the word does so by suggesting a connection with the greenery of nature. Further, though Strickland may sell an occasional plant, the products are generally not alive but are inanimate objects such as paint and furniture. Finally, it is unclear whether the mark, Livingreen, is more in reference to the products sold, the person purchasing

AO 72
(Rev. 8/82)

1   them, or whether the mark applies equally to both.  The Court ultimately concludes that the term
2   Livingreen more accurately describes the shopper than the product.  Perhaps more importantly, the
3   fact that this is in dispute shows that the mark is not descriptive but suggestive.  Regardless of the
4   Court's opinion, the mark could easily be considered suggestive rather than descriptive by a
5   reasonable juror.  Therefore, fact questions remain to be determined by a jury and this factor
6   weighs against summary judgment.

### 4. Evidence of Actual Confusion between the Marks

8   Evidence of past confusion can be persuasive proof that future confusion is likely.
9   *Sleekcraft Boats*, 599 F.2d at 352.  However, the lack thereof does not affect the overall analysis
10  strongly because it is difficult to obtain such evidence.  *Id.* at 353 ("this factor is weighed heavily
11  only when there is evidence of past confusion or, perhaps, when the particular circumstances
12  indicate such evidence should have been available.").  Also, a "[l]ikelihood of confusion will be
13  found whenever consumers are likely to assume that a mark is *associated* with another source or
14  *sponsor* because of the similarities between the two marks." *Academy of Motion Picture Arts &*
15  *Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) (emphasis
16  added).

17  WMCV focuses on the claim that general members of the public were not allowed
18  to enter the trade shows during the time periods it used the Livingreen mark.  It does, however,
19  acknowledge, that Strickland claims examples of confusion by various vendors and industry
20  professionals, such as architects and designers.  Regardless of whether these professionals or
21  vendors were actually confused about the rental of the space, the evidence seems to show that they
22  were confused about association and sponsorship.  Therefore, while inquiries into possible
23  relationships may or may not signify actual confusion, *24 Hour Fitness USA, Inc. v. 24/7 Tribeca*
24  *Fitness, LLC*, 277 F. Supp. 2d 356, 366 (S.D.N.Y. 2003), the arguments presented by WMCV is
25  insufficient for summary judgment where this factor only weighs strongly where such evidence is
26  available, not when such evidence is lacking, *Sleekcraft Boats*, 599 F.2d at 353.  Whether or not

these examples represent actual confusion and how much weight to grant that evidence is for a jury to determine.

### 5. The Marketing Channels Used

"'Convergent marketing channels increase the likelihood of confusion.'" *Addidas-America,* 546 F. Supp. 2d at 1055 (quoting *Sleekcraft Boats*, 599 F.2d at 353). Also, "when the 'general class' of purchasers of the parties' respective products is the same, confusion is more likely." *Id*. Here, the parties do not market their products in the same way, though both have an internet presence. Nor is their general class of purchasers the same. From the evidence presented, the Court concludes that the parties tend to advertise in different, even if vaguely similar magazines and journals, and WMCV markets to a much broader audience. Therefore, a reasonable juror would likely find that this factor weighs in favor of WMCV.

### 6. The Type of Goods and the Degree of Care Likely to be Exercised by the Consumer

In evaluating the likelihood of confusion to the public, the standard is the "typical buyer exercising ordinary caution." *Sleekcraft Boats*, 599 F.2d at 353. However, when determining the type of consumer relevant to this factor, courts look to the senior mark user's consumers or customers and the amount of caution they would exercise in buying the type of products at issue. *Abercrombie & Fitch Co. v. Moose Creek, Inc.* 486 F.3d 629, 634–35 n.2 (9th Cir. 2007). It is undisputed that Strickland is the senior mark user here. Although Strickland would have us look at her general retail customers, these consumers are not allowed into WMCV's events where the Livingreen mark was displayed. Yet, some overlap did occur in that both parties sell to industry professionals such as architects, interior designers, and the like. Also, Strickland consigns merchandise from certain vendors that also display wares at the WMCV events. These particular consumers are professionals and can be expected to have exercised a higher degree of care than the general public as to these types of goods. *Rearden, LLC v. Rearden Commerce, Inc.*, 597 F. Supp. 2d 1006, 1025 (N.D. Cal. 2009). However, since Strickland has presented evidence

of some confusion amongst these professional buyers, this factor does not weigh strongly in favor of WMCV. *See Kemp v. Bumble Bee Seafoods, Inc.*, 398 F.3d 1049, 1058 (8th Cir. 2005) (noting that a company salesman's uncontradicted testimony regarding actual confusion amongst sophisticated buyers supported a finding of infringement). Here, a reasonable juror could find that this factor weighs in favor of either or neither party. However, it is most likely that this factor would weigh in favor of WMCV. Nonetheless, this factor weighs against summary judgment because a reasonable juror could find for either party, and where such a possibility exists, the determination is properly left to the jury.

### 7. The Alleged Infringer's Intent in Selecting the Mark

"This factor favors the plaintiff [here, Defendant/Counter-plaintiff] where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookefield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999) (citing *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993)). Here, Strickland has presented evidence that WMCV's own records show that it had actual knowledge of Strickland's Livingreen marks. (Dkt. #111–17, Opp'n Ex. 7, Moyer Decl. at WMCV-S00501.) While Strickland presents other evidence of knowledge, this document is sufficient to show that WMCV had knowledge of Strickland's marks. Therefore, a reasonable jury would likely determine that WMCV had knowledge of Strickland's Livingreen mark, and this factor weighs strongly against summary judgment for WMCV.

### 8. Likelihood of Expansion

Where there is "a strong possibility of expansion into competing markets," this factor will weigh in favor of finding infringement. *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005). "Expansion could be either geographic or an increase in products or services." *GMC v. Keystone Auto. Indus.*, 453 F.3d 351, 358 (6th Cir. 2006). However, where the parties' goods or services are already sufficiently related, this factor is irrelevant. *See Playboy Enters. v. Netscape Communs. Corp.*, 354 F.3d 1020, 1029 (9th Cir. 2004) ("Because the

advertisers' goods and PEI's are already related, as discussed within factor two, this factor is irrelevant.") Here, a reasonable jury could either consider the products to be sufficiently related so that the factor is irrelevant or that Strickland's online and geographic expansion makes the factor weigh in her favor. Or a juror could determine that the expansion is immaterial or insufficient. Regardless, the factor weighs against summary judgment as fact questions remain for the jury.

In sum, WMCV has failed to show that no factual issues remain for a jury on the question of likelihood of confusion between Strickland's mark and the mark used by WMCV. Therefore the Court denies the motion as to the trademark infringement claims.

### B. Unfair Competition

The same likelihood of confusion requirement that applies to trademark infringement claims, applies to unfair competition claims. 15 U.S.C. § 1114(a). WMCV's arguments for summary judgment on the unfair competition claim relies entirely on their argument that the *Sleekcraft* factors show that there are no material factual questions as to likelihood of confusion. As previously discussed, the Court disagrees. Therefore, summary judgment is also improper as to Strickland's unfair competition claims.

### C. Federal Trademark Dilution

The owner of a famous mark shall be entitled . . . to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark . . . ." *Thane Intern., Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 904 (9th Cir. 2002). To establish trademark dilution a plaintiff must first show that the relevant marks are similar enough so that the "junior mark is likely to impair the distinctiveness of the famous mark." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, --- F.3d ---, 2011 WL 383972 (9th Cir. Feb. 8, 2011). Beyond similarity, the plaintiff must prove that "'(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the plaintiff's mark became famous; and (4) the defendant's use presents a likelihood of dilution of the distinctive value of the mark.'"

10

*Thane*, 305 F.3d at 907 (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 874 (9th Cir. 1999)).

### 1. Famousness

Strickland cannot show that her marks were sufficiently famous to succeed on her dilution counter-claim. In the context of a dilution claim, famousness must be construed narrowly. *Thane*, 305 F.3d at 907 (citing *Avery Dennison*, 189 F.3d at 875). "As a result, 'to meet the famousness element of protection under the dilution statutes a mark must be truly prominent and renowned.'" *Id*. In other words, famousness refers to brands like Nike, Kodak, and Coca-Cola, household names, not Livingreen. *See id.* at 911.

Neither do Strickland's marks qualify for niche market protection. The dilution statute only protects a mark famous only in a niche market if it is truly famous in that market and "the alleged diluter uses the mark within that niche." *Id.* at 908 (citing *Avery Dennison*, 189 F.3d at 877). However, that niche market must also be defined narrowly to avoid granting more protection than the statute. *Id*. at 909 (separating the niche market of elliptical trainers from that of exercise bicycles even though the two might be competitive as more generalized athletic equipment).

Here, while there is some overlap, or a reasonable juror could find overlap, between WMCV's business and Strickland's business, a reasonable juror could not determine that they operate in the same limited, niche market as required by *Thane*. As WMCV repeatedly argues, it produces trade shows while Strickland sells and consigns various environmentally friendly products. Further, although the Livingreen mark has obtained some notoriety in the environmentally friendly products niche as demonstrated by TV appearances and magazine articles, there is no evidence that it is a 'household name' even within the homes of those interested in this niche market. No reasonable juror could determine that this is sufficient fame, nor could a reasonable juror determine that WMCV and Strickland compete in the same narrowly defined niche market even if there is some competition between them in a broader trademark

AO 72
(Rev. 8/82)

1   infringement sense. Therefore, the Court grants summary judgment against Strickland's dilution
2   counter-claim.

3   **III.   Motion on Damages**

4   WMCV also requests summary judgment on all of Strickland's counter-claims[1],
5   arguing that Strickland cannot prove her damages. The Court considers this motion despite it
6   seeming to be a blatant attempt to avoid the page limitations of the Local Rules. Under the
7   Lanham Act, if Strickland proves infringement, she would be able to recover damages in the form
8   of (1) WMCV's profits, (2) Strickland's damages, and (3) the costs of the action, 15 U.S.C. §
9   1117, and/or an injunction against further infringement, 15 U.S.C. § 1116.

10  As to monetary damages, the Court agrees with WMCV that Strickland's stated
11  damages of all of WMCV's revenues during the applicable time period is beyond possibility.
12  WMCV's total revenue number is not logically related to the damages caused by any possible
13  infringement and would violate the principles of equity required here. *See Lindy Pen Co. v. Bic*
14  *Pen Corp.*, 982 F.2d 1400, 1405 (9th Cir. 1993) ("an accounting of profits is not automatic and
15  must be granted in light of equitable considerations"); *see also* 17 U.S.C. 1117(a) (requiring that
16  an award of defendant's profits be "subject to the principles of equity"). However, the actual or
17  reasonably related amount of damages is still a fact question. Therefore, summary judgment is
18  improper and the Court denies the motion.

19  /
20  /
21  /
22  /
23  /
24  /

---

[1] Since the Court has already granted summary judgment on the dilution claim, the Court does not address that claim here.

AO 72
(Rev. 8/82)

# CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that WMCV's Motion for Summary Judgment on the Issue of Liability (#86) is GRANTED in part and DENIED in part as follows:

- The motion is granted as to the dilution counter-claim; and
- The motion is denied as to all other claims.

IT IS FURTHER ORDERED that WMCV's Motion for Summary Judgment on the Issue of Damages (#87) is DENIED.

Dated: February 14, 2011.

_____
ROGER L. HUNT
Chief United States District Judge